[No. 18140. Department Two. — November 6, 1893.]

# E. R. CRAWFORD, ASSIGNEE, ETC., RESPONDENT, v. L. J. MADDUX ET AL., APPELLANTS.

INSOLVENCY—SALE OF GOODS UNDER EXECUTION—VOID AGREEMENT TO PREVENT COMPETITION.—Where the goods of an insolvent debtor are sold under execution and purchased by the execution creditors for a small sum, under an agreement with the agent of other creditors that he would not bid at the sale, in consideration that the execution creditors would pay his principals a larger sum, being the difference between the amount bid and what the execution creditors were willing to pay for the goods under competition, such agreement is against public policy, and wholly void, and could neither be enforced before payment nor remedied by recovery of the money after payment.

ID.—ACTION BY ASSIGNEE OF INSOLVENT—MONEY PAID NOT PART OF INSOLVENT'S ESTATE.—The amount paid under such void agreement by the execution creditors did not, because of the wrong, become the property of the execution debtor, his only remedy being to set aside the sale by reason of the fraud; and his assignee in insolvency cannot maintain any action under section 23 of the Insolvent Act of 1880 to recover double the value of the money so paid, as being property of the debtor embezzled or disposed of with notice of the commencement of the proceedings in insolvency.

ID.—RECEIPT OF MONEY BY PETITIONING CREDITORS—TRUST.—Where the execution was levied upon the goods before the petition for adjudication of insolvency was filed, and the creditors petitioning for such adjudication were in no way instrumental in procuring the execution sale, and their only connection with it was through the agreement made by their agent, and the receipt of money from the execution purchasers, which was not the money of the insolvent or his creditors, no trust was created in relation thereto in favor of other creditors of the insolvent.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial.

The facts are stated in the opinion.

*Chickering, Thomas & Gregory*, for Appellants.

*L. L. Dennett*, and *J. C. Needham*, for Respondent.

HAYNES, C.—On September 26, 1889, one Goldzier obtained a judgment in a justice's court against Granger, the owner of a drug store. An execution was issued thereon, and on October 15, 1889, the goods were sold

by the constable under the execution to J. W. Husband and G. S. Turner for one hundred and ninety-six dollars, the amount of said judgment and costs.

On October 1, 1889, the Jacob Unna Co., Redington & Co., Alfred Groenebaum & Co., Whittier, Fuller &. Co., and Yates & Co. (appellants here), creditors of Granger, filed a petition in the superior court praying that Granger be adjudged an insolvent debtor. The record does not disclose at what time the order to show cause was made returnable, nor when it was served upon Granger, but on December 7, 1889, he was adjudged an insolvent debtor, and on August 15, 1890, Crawford, the plaintiff in this aciton, was elected assignee.

It was further alleged in the complaint, and the court found, that one A. C. Bonnell was the agent of the appellants, and as such agent agreed with Husband and Turner, who desired to purchase the store at said execution sale, that he would not bid at such sale in consideration that they, said Husband and Turner, would pay appellants the sum of seven hundred and four dollars; that Husband and Turner had represented to Bonnell that they were willing to pay nine hundred dollars for the store; "that thereafter the said Husband and Turner did bid in the said store and stock thereof for the sum of one hundred and ninety-six dollars, and the said Bonnell did refrain from bidding at said execution sale," and that thereafter Husband and Turner paid to defendant Maddux said sum of seven hundred and four dollars; that Maddux transferred the money to the Board of Trade of San Francisco, who paid the same to defendants, the said petitioning creditors, and that they "received the said sum of seven hundred and four dollars belonging to the insolvent estate of said W. W. Granger before the assignment therein, and, having notice of the commencement of the proceedings in insolvency, converted and appropriated the same to their own use, and refused to deliver the same when demanded by the assignee of the said insolvent estate, the plaintiff herein."

The court further found that the value of the store was nine hundred dollars; that the constable who made the sale had no knowledge of said agreement; that Husband and Turner had no knowledge that said seven hundred and four dollars was not to be paid to the assignee of Granger, and that Maddux was an innocent agent in the transaction.

Judgment was rendered against appellants for the sum of fourteen hundred and eight dollars with interest from October 15, 1889, amounting to two hundred and thirteen dollars and fifty-four cents, and costs of suit. This appeal is from said judgment and an order denying defendants' motion for a new trial.

The action is based upon section 23 of the Insolvent Act of 1880, which is as follows: "If any person, before the assignment is made, having notice of the commencement of proceedings in insolvency, embezzles or disposes of any of the moneys, goods, chattels, or effects of the insolvent, he is chargeable therewith, and liable to an action by the assignee for double the value of the property so embezzled or disposed of, to be recovered for the benefit of the estate."

By section 61 of the same act the filing of a petition by or against the debtor is declared to be the commencement of proceedings in insolvency under the act.

The judgment against appellants is based upon the theory that the property sold by the constable was of the value of nine hundred dollars; that Husband and Turner were willing to pay that amount for it; that the agreement between them and Bonnell, as the agent of appellants, prevented competition; that the money paid to appellants after the sale was the money of the insolvent's estate, and that its appropriation by them was an embezzlement of the money of Granger, against whom proceedings in insolvency had been commenced.

It is apparent that if the money so paid by Husband and Turner was not the money of Granger the judgment is wrong.

Appellants have not at any time had possession or

control of the goods under execution. The agreement in question was against public policy, and wholly void. If Husband and Turner had refused to pay the money, Bonnell could not have compelled payment, or if after payment the sale had been set aside because of the agreement Husband and Turner could not have compelled Bonnell or his principals to repay it. (*Packard v. Bird,* 40 Cal. 378; Freeman on Executions, sec. 297, and cases there cited.) The payment was, therefore, voluntary, and the agreement was made by Husband and Turner for their real or supposed personal advantage. The finding of the court, that they did not know that the money was not to go to the creditors of Granger does not in any way affect the question. The illegality and wrong of the agreement was the prevention of competition at the sale, and that illegality and wrong would have been equally great and equally capable of redress by setting aside the sale if the consideration had been but five dollars, or if the absence of competition had been procured by false representations or fraudulent devices, without the payment of any money. The amount paid cannot, therefore, because of the wrong, become the property of the execution debtor, nor create a demand in his favor for the amount so paid, nor even be the measure of damages, if an action of that character would lie.

The action here, however, is not for damages for any fraud practiced by appellants, but for the embezzlement of seven hundred and four dollars of the money, property, and effects of the insolvent debtor; and the material question is whether that money was the money of the insolvent's estate.

It will hardly be contended that if the agreement had been to give appellants a pair of horses, or to convey to them a certain parcel of land, and the horses had been delivered or the land conveyed in fulfillment of the agreement, that the plaintiff could have replevied the horses as the property of the estate, or compelled a con-

veyance of the title to the land, for the plain reason
that neither Granger, before the adjudication of insol-
vency, nor his estate afterwards, was the owner of the
property sought to be replevied, or recovered; and, if
not, an appropriation of the horses or the land to the
use of appellants could not be an embezzlement.

Counsel for respondent do not cite us to any case
where it has been held that money or property received
by one in consideration of not bidding at a judicial sale
may be recovered in an action by the judgment debtor
or his assignee, nor has any such decision fallen under
our notice; and if an action could not be maintained
for the recovery of the sum so received, it must be clear
that an action for its embezzlement will not lie.

Respondent's argument that the failure of appellants,
the petitioning creditors, to pay the costs in the in-
solvency proceeding, whereby the appointment of the
assignee was greatly delayed, and that the remedy by
vacating the sale was thereby rendered inadequate, is,
therefore, without force, because it could not operate to
give a cause of action for embezzlement, where that ac-
tion could not have been maintained if the assignee had
been appointed without delay.

Respondent also contends that appellants, who were
petitioning creditors, were trustees for the creditors, and
that the judgment should be sustained upon that
ground.

The execution was levied upon the store before the
petition was filed, and the sale under that execution
could not have been prevented. They were in no way
instrumental in procuring the sale. Their only con-
nection with it was through the agreement made by
Bonnell, and, as the money paid by the execution pur-
chasers under that agreement was not' the money of
Granger or his creditors, no trust was created in appel-
lants in relation thereto.

These considerations necessarily dispose of other ques-
tions presented by appellants.

I think the judgment and order appealed from should be reversed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.